STATE, EDWARD COOPER AND ABRAM S. HEWITT, PROSE-
CUTORS, v. GILLIAM DE BOW, COLLECTOR OF POMPTON
TOWNSHIP.

The notice required by the fifty-sixth section of the Tax act is not neces-
sarily to be served upon the person whose tax is proposed to be raised.
It may be served upon an agent whose duty involves that of communi-
cating the fact of such notice to the principal.

———

On *certiorari*. In matter of taxation.

Cooper v. De Bow.

Argued at February Term, 1884, before Justices KNAPP, DIXON and MAGIE.

For the plaintiffs, *J. W. Griggs* and *Barker Gummere.*

For the defendant, *Z. M. Ward* and *Henry C. Pitney.*

The opinion of the court was delivered by

KNAPP, J.   The prosecutors were assessed in the township of Pompton, Passaic county, in the year 1881, for a tract of land of above eight thousand acres, upon a valuation made by the assessor of $90,000, which valuation was subsequently raised by proceedings before the commissioners of appeal to $250,000.   This assessment is brought before us on *certiorari.* The prosecutors object to the legality of the proceedings before the commissioners of appeal; and that the valuation placed upon the property by them is too great.

As to the form of the proceeding the only objection that has raised any doubt in the mind of the court is that respecting the service of notice upon the prosecutor required by section 56 of the Tax law.   *Rev., p.* 1149.   The act provides that upon complaint made that any person or body politic is assessed at too low a rate, the commissioners of appeal, after five days' notice in writing to the party interested by the party complaining, and after due examination, &c., may make such additions to the assessment as shall be agreeable to the principles of justice. The notice in this case was served, not personally upon either of the prosecutors, but upon Philip R. George, a person in the employment of the prosecutors.   We think personal service is not indispensable under that act, but service may be made upon the party's agent, when such agency involves the duty of communicating the fact of such notice to the principal.   And we think that Mr. George is shown to have had such general charge of the property and affairs of the prosecutors as fairly to justify the conclusion that he was such agent, in the absence of definite proof of a more restricted relation.   The notice secured the attendance of the prosecutors before the commis-

sioners of appeal, and there is some doubt whether the objection was taken before the commissioners to the manner of giving the notice. We think the proceedings were legal. There is more force, we think, however, in the objection that the valuation placed upon the land by the commissioners of appeal is too large. It is somewhat difficult to arrive at the actual value of lands of this character, because little of it is bought or sold. It consists principally of mountain lands, almost entirely wooded, and has on it iron ore, several mines of which have been opened ; some are worked to a limited extent and others apparently abandoned. The testimony seems to show that of the whole eight thousand five hundred acres not one hundred acres of it have ever been used for farming, or, so far as appears, are adapted to farming purposes. The prosecutors own an entire tract of about nineteen thousand acres of the same sort of land, about ten thousand of it lying in the adjoining township of West Milford. The cost of the entire property to the prosecutors, according to the testimony, was a little less than $126,000. That part of it lying in the township of Pompton has been assessed upon a valuation of $90,000 for several years, and the assessor, Mr. Vreeland, swears that he considers that the fair valuation of the property now. The ten thousand acres lying in the township of West Milford seem to be property of about the same general character, and are assessed on a valuation of $65,000. When you look at the valuations placed upon other property in the township of Pompton, which includes all the improved farms in the township as well as the houses and small lots in the villages in the township, you find the average valuation is about $15 per acre. Compared with the assessments laid upon these other lands, the estimate placed upon the lands of the prosecutors by the assessor is, to say the least, proportionally high. The assessed value of lands adopted by the assessor, accepted and acquiesced in by the public, is quite important evidence of the true general valuation of lands in the taxing district and may fairly be regarded as representing such value, unless it be shown that the design was not to follow the law, which

Central Railroad Co. v. Hudson Terminal Railway Co.

requires a true valuation. There is, however, in this case some evidence to show that the assessor designedly under-estimated all the land in the township, including that of the prosecutors. If this be so, while it may operate unfairly for the time upon the prosecutors to raise their assessment to the true value, leaving the others at the lesser rate, our duty requires us in making the estimation here to find out and determine what is the actual value.

The redress of the parties thus temporarily injured is to cause by proper proceedings the other assessments to be raised. Mr. Hewett, in his testimony, admits that their tract in this township is worth $140,000, estimated at its full value, and we are of opinion, upon a full consideration of all the evidence, that the sum named should be adopted by us as the true value of the property for assessment. It is not our purpose to review the great bulk of testimony taken on this question. Some of the witnesses have placed these lands at a much higher value than that adopted by the court, but we think much of this testimony is speculative and some of it fanciful, and we refuse to accept it as our guide. We think the tax should be affirmed upon a valuation of $140,000, and that it should be reversed as to the excess, with costs.